UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANN PEARLINA BROWN, Individually and on
behalf of all other persons similarly situated,

                                Plaintiff,

        -against-

SIWANOY COUNTRY CLUB, INC.,

                                Defendant.

No. 23-CV-6399 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff, Ann Pearlina Brown, ("Plaintiff"), individually and on behalf of all others similarly situated, bring this putative Collective and Class Action against Siwanoy Country Club, Inc. ("Defendant" or the "Club"), pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and the New York Labor Law, § 190 et seq. ("NYLL"). The Amended Complaint alleges that Defendant failed to pay minimum wages, failed to pay overtime wages, failed to pay spread-of-hours pay, failed to provide notice of pay rate, and failed to provide wage statements.

Pursuant to Federal Rules of Civil Procedure 12(b)(6), the Defendant has moved to dismiss the Amended Complaint. ("Motion", ECF No. 17.) For the following reasons, Defendant's Motion is GRANTED.

## BACKGROUND

### A. Factual Background

Defendant is a private golf club in Bronxville, New York where Plaintiff worked as a golf caddy. (Amend. Compl. at 3.) The Club has about 300 members who must each pay a one-time initiation fee as well as annual dues. (*Id*.) The Club's annual gross volume of business is at least

$500,000. (*Id*. at 2.) Plaintiff worked for the Club during the 2020 golf season, which ran from May to October of that year. (*Id*. at 3.)

The Amended Complaint states that the Club employs approximately 30 golf caddies at any one time. (*Id*.) Caddies are required to wear a uniform, which consists of a colored shirt, khaki pants, and a green bib with the Club's insignia. (*Id*.) Caddies are primarily responsible for carrying the bags of the golfer that they are assigned to for a "loop." (*Id*. at 4.) A "loop" is a round of golf and typically takes around four hours to complete. (*Id*. at 5.) A caddy will do one or two loops a day. (*Id*. at 5.) During a loop, the caddy will carry either one or two golf bags at a price of $60-$80 per bag. (*Id*. at 7.) The Club determines the bag fee, and the Caddy keeps the entire fee for their services. (*Id*.) Separate from the bag fee, golfers may also tip their caddies at their discretion. (*Id*. at 7.) The Club does not provide any other form of compensation to its caddies. (*Id*. at 6.)

To oversee the caddies, the Club also employs a "Caddy Master." (*Id*.) The Caddy Master's responsibilities include, among other things, pairing the caddy with a golfer, supervising them, scheduling them, and discussing feedback from golfers that they caddied for. (*Id*.) The Caddy Master will arrive at 6:30 a.m. and begin assigning caddies to their respective golfers. (*Id*. at 5.) Caddies will typically stop working between 4:00 and 6:00 p.m. or if the Caddy Master dismisses them. (*Id*. at 5.) Typically, caddies will work six days a week at a range of 40-54 hours a week. (*Id*.)

## B.  Factual Allegations

Plaintiff alleges that there was no agreement between the caddies and the Club that the bag fees would count toward the Club's obligations to pay minimum wage. (*Id*. at 8.) Plaintiff also alleges that the Club intentionally misclassified its caddies as independent contractors as opposed to employees to avoid paying them overtime. (*Id*. at 14.) Further, Plaintiff alleges that she typically

worked 57 hours a week at a rate of 9.5 hours a day, six days a week. (*Id*. at 10.) Plaintiff was not paid overtime for hours worked over the 40-hour threshold.  (*Id*. at 14.) Plaintiff also alleges that the Club failed to provide notice of pay rate as is required under New York law. (*Id*. at 17.) And finally, Plaintiff alleges that the Club did not keep records sufficient to determine the wages, hours, and other conditions of employment related to their caddies. (*Id*. at 20.)

## PROCEDURAL HISTORY

On July 24, 2023, Plaintiff filed the original Complaint. (ECF No. 1.) On January 22, 2024, Plaintiff filed an Amended Complaint. (ECF No. 17.) The Amended Complaint is the operative complaint. Defendant filed this Motion on March 27, 2024. (ECF No. 18), as well as a memorandum of law ("Def.'s MoL.", ECF No. 19) and reply (ECF No. 23), in support thereof. Plaintiff filed an opposition to Def.'s MoL. (ECF No. 21.)

## LEGAL STANDARD

### A.  Rule 12(b)(6) Motion to Dismiss Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether a complaint states a claim upon which relief can be granted, the court "begins by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Where the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged, but has not shown that the pleader is entitled to relief. *Id.*

## DISCUSSION

Plaintiff's Amended Complaint asserts claims pursuant to the FLSA and NYLL. Specifically, Plaintiff alleges that the Club willfully violated the FLSA by (1) failing to pay the minimum wage and (2) failing to pay overtime premium pay. (Amend Compl. at 1.) Plaintiff alleges that the Club violated the NYLL by (1) failing to pay the minimum wage, (2) failing to pay overtime premium pay, (3) failing to pay the spread-of-hours pay; (4) failing to provide the N.Y. Lab. Law § 195.1 notice; and (5) failing to provide the N.Y. Lab. Law § 195.3 wage statements. (*Id.*)

In their Motion, Defendant asserts several grounds for dismissal. Defendant asserts that Plaintiff's FLSA claims are time-bared because they have not plausibly alleged a willful violation. Defendant also argues that Plaintiff's claims should be dismissed because she does not allege that she was paid below minimum wage. Upon dismissal of the Plaintiff's FLSA claims, Defendant argues that any remaining state law claims should be dismissed for lack of supplemental jurisdiction.

### **Statute of Limitations**

Plaintiff filed this action on July 24, 2023, and alleges misconduct that took place between May and October of 2020. The FLSA contains a two-year statute of limitations that can be extended to three years if there has been a willful violation. For this action to be timely, Plaintiff would need to allege a willful violation under the FLSA. Plaintiff has failed to do so. As a result, Plaintiff's FLSA claims are time-barred.

### A.  Legal Background

The lapse of a limitations period is an affirmative defense that must be pled and proven. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). But a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint. *Id*. If the complaint "clearly shows the claim is out of time," a court may dismiss a claim on statute-of-limitations grounds at the pleading stage. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

To establish a willful violation of the FLSA, Plaintiff must allege sufficient facts that the employer either: (1) knew its conduct was prohibited by the FLSA or (2) showed reckless disregard for whether its conduct was prohibited by the FLSA. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The Second Circuit has clarified that "whether a defendant has willfully violated the FLSA is a mixed question of law and fact on which the plaintiff carries the burden of proof" and that general "averment[s] of 'willfulness' [are] precisely the sort of legal conclusions that *Twombly* and *Iqbal* counsel must be supported by factual allegations." *Whiteside,* 995 F.3d at 321. In so doing, the court held that general averments, without more, are insufficient for the three-year exception to apply and that plaintiffs must "plausibly allege willfulness to secure [its] benefit." *Id*. at 320.

### B.  Application

Plaintiff generally avers of a willful violation without sufficient factual allegations. To support its claim of willfulness, Plaintiff alleges that the Club was aware of its requirement to pay minimum wage and overtime premium pay but that the Club failed to do so. (Amend. Compl. at 9.) Plaintiff also alleges that the Club designed its compensation policy to minimize

labor costs and not to comply with the FLSA or NYLL. (*Id.*) Plaintiff continues that the Club knowingly disregarded its recordkeeping requirements, which impeded the caddies' ability to determine hours and wages owed. (*Id.*) Plaintiff further alleges that the Club knowingly misclassified its caddies as independent contractors instead of employees as part of its policy to minimize labor costs and not to comply with the FLSA or NYLL. For the following reasons, the Court concludes that Plaintiff's allegations are insufficient to establish a willful violation.

First, Plaintiff's allegation that the Club was "aware of its requirement to pay its Golf Caddies the minimum wage and overtime premium pay" is conclusory. Pleadings that offer "'conclusions' or a 'formulaic recitation of the elements of a cause of action'" will not sustain a claim. *Iqbal*, 556 at 678. The Court finds that Plaintiff's allegation that the Club was "aware of its requirements to pay" is logically identical to alleging that the Club "knew of its requirements to pay," which is no more than a recitation of one of the necessary elements. As such, Plaintiff's allegation that Defendant was aware of its requirements to pay minimum wage and overtime pay is not sufficient to establish a willful violation.

Second, Plaintiff's allegation that the Club "designed its compensation policy to minimize labor costs and not to comply with the FLSA" is not sufficient to establish a willful violation. Plaintiff alleges no facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 at 678. For example, Plaintiff does not proffer that Club officials specifically told Plaintiff or others that this policy was with the intent of evading the FLSA or that the compensation policy is so oddly paired with caddy services that a plausible inference would be that the Club designed it to evade the FLSA. Instead, Plaintiff pleads facts that are "merely consistent with [the] defendant's liability." *Id*. These sorts of claims

fall "short of the line between possibility and plausibility" as is required to survive a motion to dismiss. *Id.*

Plaintiff points the Court to *Maria v. El Mambi Rest. Corp.*, No. 20-CV-3707 (JPO), 2021 WL 2337577 (S.D.N.Y. June 8, 2021) as support that her allegations are sufficient to establish a willful violation. The Court, however, does not find *Maria* persuasive. In *Maria*, the district court did not provide much analysis on how these assertions were sufficient to sustain plaintiff's claims. Instead, the court in *Maria* relied on two district court cases that held that a finding of willfulness was preferred at the motion to dismiss stage in reaching its conclusion that plaintiff's "general allegations suffice[d] to adequately plead willfulness." 2021 WL 2337577, at *4. But the Second Circuit in *Whiteside* specifically held that such general averments of willfulness will not suffice and that a plaintiff must plausibly allege their claims. 995 F.3d at 320-21. The Court concludes that *Whiteside* dictates a different result than *Maria*.[1] Further, the Court joins its fellow district court who found that near-identical allegations were insufficient to sustain a claim of willfulness. *See Lewis v. Pelham Country Club*, No. 23-CV-6500 (KMK), 2024 WL 4275588 (S.D.N.Y. Sept. 24, 2024).

Third, Plaintiff's assertion that the Club "knowingly disregarded its recordkeeping requirements" so that its caddies could not calculate their hours and wages is similarly insufficient. Plaintiff provides no factual support that the Club's failure to have proper recordkeeping practices in place are in any way related to an effort to impede the caddies' ability to calculate hours and wages. At the very least, absence of a recordkeeping system does not support the assertion that the Club did so knowingly or recklessly as is required to establish

---

[1]      In *Maria*, the court relied on *Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363 (S.D.N.Y. 2012) and *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 191 (E.D.N.Y. 2015) both of which pre-date *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315 (2d Cir. 2021).

willfulness. In this context, failure to keep proper records would be better understood as negligent, which is insufficient. *See Whiteside*, 995 F.3d at 324.

Plaintiff argues its allegations of recordkeeping failures are like those in *Mota v. Abalon Exterminating Co., Inc*., No. 1:22-CV-7602 (MKV), 2023 WL 5211022 (S.D.N.Y. Aug. 14, 2023) and should similarly be sufficient to establish willfulness. The Court disagrees. In *Mota*, to support a finding of willfulness, the court relied on allegations that the defendants would divide their employees' hours into separate paychecks so that their check never reflected their accurate hours in an attempt to avoid paying overtime. *See* 2023 WL 5211022, at \*3. The recordkeeping allegation in *Mota* was not part of the court's analysis in finding that the Plaintiff had sufficiently alleged a willful violation. Accordingly, Plaintiff's assertion that Defendant knowingly disregard its recordkeeping requirements is not sufficient to establish a willful violation.

Finally, Plaintiff's assertion that Defendant knowingly "misclassified its caddies as independent contractors when they should have been classified as employees" to minimize labor costs as opposed to complying with the FLSA also do not pass muster. Plaintiff, again, provides no factual support that the Club's classification of caddies as independent contractors is in any way related to (1) an attempt to minimize labor costs or (2) to evade FLSA requirements. Moreover, Plaintiff's reliance on *Damassia v. Duane Reade, Inc.*, No. 04 CIV. 8819 (GEL), 2005 WL 1214337 (S.D.N.Y. May 20, 2005) is misguided. There, the court found a willful violation because plaintiff alleged that night-time stock clerks were deceptively titled as "assistant night managers" to create the impression that they were executives exempt from overtime pay. 2005 WL 1214337, at \*1. When there are factually supported allegations that the defendant is engaging in such an odd practice—e.g., dividing hours into separate checks, or clearly mismatching job title and job role—the Court is provided enough to plausibly infer that

there was a willful violation of the FLSA. Plaintiff has not provided that to the Court here. Accordingly, Plaintiff's FLSA claims must be dismissed as time-barred.

**State Law Claims**

Because the Court has dismissed all claims over which it had original jurisdiction it declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c). Accordingly, the state claims are dismissed without prejudice.

**Leave to Amend**

Courts are to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has counseled courts not to dismiss a complaint with prejudice prior to issuing a ruling that highlights the "precise defects" of those claims. *Williams v. Citigroup Inc.,* 659 F.3d 208, 214 (2d Cir. 2011) (per curiam). Accordingly, the Court dismisses all of Plaintiff's claims without prejudice, granting leave to amend their claims.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss the Amended Complaint is GRANTED and all claims are dismissed without prejudice. Plaintiff is granted leave to file a Second Amended Complaint as to any claims that have not been dismissed with prejudice. If Plaintiff chooses to do so, Plaintiff will have until November 27, 2024, to file a Second Amended Complaint. The Defendant is then directed to answer or otherwise respond by December 23, 2024.

If Plaintiff fails to file a Second Amended Complaint within the time allowed, and he or she cannot show good cause to excuse such failure, any claims dismissed without prejudice by this Order will be deemed dismissed with prejudice.

The Clerk of Court is kindly directed to terminate the motion at ECF No. 18.


Dated: October 21, 2024                              SO ORDERED:
White Plains, New York


                                          NELSON S. ROMÁN
                                          United States District Judge