USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:    9/29/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANN PEARLINA BROWN, individually
and on behalf of all others similarly situated,

Plaintiff,

-against-

SIWANOY COUNTRY CLUB, INC.,

Defendant.

7:23 CV 06399 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Ann Pearlina Brown ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative Collective and Class Action against Siwanoy Country Club, Inc. ("Defendant" or "the Club"), pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and the New York Labor Law, § 190 et seq. ("NYLL"). (*See* Second Amended Complaint ("SAC") ¶¶ 3-4, ECF No. 28.) Specifically, Plaintiff alleges that Defendant failed to pay minimum and overtime wages, failed to pay spread-of-hours pay, failed to provide notice of pay rate, and failed to provide wage statements. (*See id.*)

Defendant moves to dismiss Plaintiff's SAC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ("Motion," ECF No. 31.) For the reasons that follow, the Court denies Defendant's Motion.

## BACKGROUND

### I.    Factual Background

The following facts are taken from the SAC and assumed to be true for the purpose of resolving Defendant's Motion.

1

### 1. The Parties

Defendant is a private golf club in Bronxville, New York. (SAC ¶ 13.) The Club's approximately 300 members must pay a one-time initiation fee and annual dues. (*Id.* ¶¶ 14-15.)

Plaintiff worked at the Club as a golf caddy "for the 2020 golf season." (*Id.* ¶ 92.) A golf season runs from May to October. (*Id.* ¶ 16.) While working as a golf caddy for the Club, Plaintiff did not work at any other club. (*Id.* ¶ 93.)

### 2. Caddies' Responsibilities at the Club

The Club employs approximately 30 golf caddies at any one time, many who work exclusively for the Club, returning season after season. (*Id.* ¶¶ 17, 26.) Most of the golfers at the Club use a caddy. (*Id.* ¶ 25.) Golf caddies at the Club are required to wear a uniform, which consists of a colored shirt, khaki pants, and a green bib with the Club's insignia. (*Id.* ¶ 23.) Among other duties, they are primarily responsible for carrying the bags of the golfer that they are assigned to for a "loop." (*Id.* ¶¶ 31-32.) A "loop" is a round of golf and typically takes around four hours to complete. (*Id.* ¶ 41.) Typically, a golf caddy will do one or two rounds a day with two assigned golfers per round. (*Id.* ¶¶ 42, 52.) Golf caddies typically begin work at the Club around 6:30 a.m. and, depending on when the sun goes down, end work between 4:00 p.m. and 6:00 p.m. (*Id.* ¶¶ 36-37.) The Club's golf caddies typically work 6 days a week, Tuesday to Sunday, with some working on Mondays if there is an "outing" scheduled (i.e., the Club has been rented for a company or charity event). (*Id.* ¶ 38.) Golf caddies at the Club typically work between 40 and 54 hours a week. (*Id.* ¶ 40.)

In addition to its caddies, Defendant also employs a "Caddy Master." (*Id.* ¶ 18.) The Caddy Master's primary responsibility is to oversee the golf caddies, including by "pairing them with a golfer, supervising them, hiring and firing them, interviewing them, scheduling them,

determining whether they will work on a particular day, disciplining them, setting the time of

day by when they must report to the Club, telling them when they are done working for the day,

and discussing with Golf Caddies when a member complains about them." (*Id.* ¶ 19.) The Caddy

Master decides how many rounds of golf a caddy will work in any given day. (*Id.* ¶ 43.)

### 3.  Bag Fees

During a round, the caddy will carry either one or two golf bags at a price of $60-$80 per

bag, a fee determined by the Club. (*Id.* ¶¶ 53-54.) Caddies are not allowed to negotiate or change

the bag fee, but they "keep 100% of the bag fee" for their services. (*Id.* ¶¶ 55-57.) Separate from

the bag fee, golfers may also tip their caddies at their discretion. (*Id.* ¶ 59.) The bag fee and the

tips are the caddy's "sole compensation." (*Id.* ¶ 61.) The Club does not provide any other form of

compensation to its caddies.

## II.    Factual Allegations

Plaintiff alleges that she typically worked 57 hours a week at a rate of 9.5 hours a day, six

days a week (again, "for the 2020 golf season"). (*Id.* ¶¶ 92, 96-97.) Plaintiff alleges that she was

not paid the minimum wage and that she was not paid overtime for hours worked over the

40-hour threshold. (*Id.* ¶¶ 100-102, 123.) In fact, Plaintiff avers that the Club did not pay her any

compensation at all. (*See id.* ¶¶ 98, 101-102 ("[The] Club did not pay Plaintiff Brown any

compensation during her employment with the Club, not an hourly rate, salary or any other form

of compensation," including any "overtime premium" or "spread-of-hours pay."); *see also*

Plaintiff's Opposition ("Pl. Opp'n") at 3, ECF No. 34 ("The Club did not…pay Plaintiff

anything.") Instead, caddies like Plaintiff received payment from golfers directly in the form of

the bag fees and discretionary tips. (*Id.* ¶¶ 51 ("The only compensation the Golf Caddies receive

comes directly from the golfers.").) Plaintiff also alleges that caddies often wait many hours at

the Club before being assigned a round and that the Club does not pay them for the time they spend waiting. (*Id.* ¶¶ 44, 62.) Plaintiff alleges that she "heard numerous caddies complain to the Caddy Master about the Club not paying caddies anything when they were at the Club all day and did not go out on a loop." (*Id.* ¶ 83.) The Club did not change its compensation polices in response to the complaints and, according to Plaintiff, the caddies that complained were threatened by the Caddy Master with not being paired with a golfer. (*Id.* ¶¶ 83-84.)

Plaintiff alleges that there was no agreement between the caddies and the Club that the bag fees would count toward the Club's obligations to pay minimum wage and overtime. (*Id.* ¶ 69.) Plaintiff also alleges that the Club intentionally misclassified its caddies as independent contractors as opposed to employees to avoid paying them the minimum wage or overtime. (*Id.* ¶ 119; *see also* Pl. Opp'n at 7.) Lastly, Plaintiff alleges that the Club failed to provide notice of pay rate and wage statements as is required under New York law and failed to keep records sufficient to determine the wages, hours, and other conditions of employment related to their caddies. (SAC ¶¶ 64-65, 70-76.)

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing the original Complaint on July 24, 2023. (ECF No. 1.) On January 22, 2024, Plaintiff filed an Amended Complaint. (ECF No. 17.) On March 27, 2024, Defendant filed its motion to dismiss the Amended Complaint as well as a memorandum of law and reply, in support thereof. (ECF Nos. 18-19, 23.) Plaintiff filed an opposition to Defendant's motion. (ECF No. 21.) On October 21, 2024, the Court granted Defendant's motion to dismiss Plaintiff's Amended Complaint, without prejudice, and granted Plaintiff's request for leave to file a SAC. ("Order," ECF No. 27.)

Plaintiff filed her SAC on November 4, 2024. On February 18, 2025, Defendant filed the

instant Motion as well as a memorandum of law ("Def.'s Mem. of Law") and reply, in support

thereof. (ECF Nos. 31, 33, 35, respectively.) Plaintiff filed an opposition to Defendant's motion.

("Pl. Opp'n", ECF No. 34.) In their Motion, Defendant asserts that Plaintiff's FLSA claims are

time-barred because she has not plausibly alleged a willful violation. Defendant also argues that

Plaintiff's claims should be dismissed because her allegations do not support a claim for unpaid

wages.

## LEGAL STANDARD

### I.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") provides, in relevant part, that

a case is properly dismissed for lack of subject matter jurisdiction when the district court lacks

the statutory or constitutional power to adjudicate it. When resolving a Rule 12(b)(1) motion for

lack of subject matter jurisdiction, the court may refer to evidence outside the

pleadings. *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1010-11 (2d Cir. 1986).

Plaintiff bears the burden of demonstrating by a preponderance of the evidence that subject

matter jurisdiction exists. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

### II.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), dismissal is proper

unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in

the complaint, "a court should assume their veracity and then determine whether they plausibly

give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual

allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is

"not bound to accept as true a legal conclusion couched as a factual allegation," or to credit

"mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of

action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint

to include any written instrument attached to it as an exhibit or any statements or documents

incorporated in it by reference ... and documents that plaintiffs either possessed or knew about

and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir.

2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient

facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at

570. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the

reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678.

## DISCUSSION

**I.    Whether Plaintiff's FLSA Claims Are Time-Barred**

**A.  Pleading Standard for FLSA Claims**

In support of its Motion, Defendant asserts that the FLSA claims in the SAC must be

dismissed as time-barred because Plaintiff has not plausibly alleged that the Club willfully

violated the FLSA. (Def.'s Mem. of Law at 5-8.)   Plaintiff argues that the new allegations in the

SAC provide sufficient evidence of a willful violation. (*See generally* Pl. Opp'n.)

To restate the relevant standard, the FLSA contains a two-year statute of limitations that

can be extended to three years if there has been a willful violation. Plaintiff filed this action on

July 24, 2023 and alleges misconduct that took place between May and October of 2020.

Consequently, for this action to be timely under the extended three-year statute of limitations,

Plaintiff would need to allege a willful violation under the FLSA and also that she was employed

on or after July 24, 2020.[1] The lapse of a limitations period is an affirmative defense that must be

pled and proven. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

But a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the

defense appears on the face of the complaint. *Id.* If the complaint "clearly shows the claim is out

of time," a court may dismiss a claim on statute-of-limitations grounds at the pleading stage.

*Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (quoting *Harris v. City of New*

*York*, 186 F.3d 243, 250 (2d Cir. 1999)). To establish a willful violation of the FLSA, Plaintiff

must allege sufficient facts that the employer either: (1) knew its conduct was prohibited by the

FLSA or (2) showed reckless disregard for whether its conduct was prohibited by the FLSA. *See*

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "Therefore, a plaintiff must show

more than that defendant should have known it was violating the law. Should have known

implies negligence or reasonable person standard. Reckless disregard, in contrast, involves actual

knowledge of a legal requirement and deliberate disregard of the risk that one is in violation."

*Agureyev v. H.K. Second Ave. Rest. Inc.*, No. 17-CV-7336, 2018 WL 4356731, at *2 (S.D.N.Y.

Sept. 12, 2018) (internal citations omitted); *see also Whiteside*, 995 F.3d at 324 ("Mere

negligence is insufficient [to demonstrate willfulness.]" (quoting *Young v. Cooper Cameron*

*Corp.*, 586 F.3d 201, 207 (2d Cir. 2009)).

The Second Circuit has clarified that "whether a defendant has willfully violated the

FLSA is a mixed question of law and fact on which the plaintiff carries the burden of proof" and

---

[1] Defendant argues that Plaintiff's vague allegation that she worked at the Club "for the 2020 golf
season" is insufficient to establish that she has stated a claim under the FLSA for a violation
occurring on or after July 24, 2020. *See* Def.'s Mem. of Law at 8. For the purpose of resolving this
Motion, and without evidence to infer the contrary, the Court reasonably assumes that when Plaintiff
alleges she worked "for the 2020 golf season," Plaintiff means she worked for the entirety of that
season.

that general "averment[s] of 'willfulness' [are] precisely the sort of legal conclusions that *Twombly* and *Iqbal* counsel must be supported by factual allegations." *Whiteside*, 995 F.3d at 321. In so doing, the court held that general averments, without more, are insufficient for the three-year exception to apply and that plaintiffs must "plausibly allege willfulness to secure [its] benefit." *Id.* at 320.

### B. Application

In its prior Order, the Court dismissed Plaintiff's Amended Complaint, finding that Plaintiff had pled insufficient nonconclusory facts to plausibly infer a willful violation of the FLSA. (*See generally* Order.) In the SAC, Plaintiff amended their allegations to include several new facts, each of which the Court addresses in turn.

First, Plaintiff attempts to allege willfulness by adding that the Club has employed hundreds of individuals since it began operating in 1901, and, therefore, its "employment history shows it is aware of the FLSA and Labor Law's requirements to pay its employees the minimum wage and overtime." (SAC ¶¶ 78-79.) This statement, without more, amounts to "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Beyond noting the Club's long period of operation, Plaintiff provides no facts suggesting that the Club had any actual "awareness of impropriety" with respect to how its golf caddies were compensated. *See Whiteside*, 995 F.3d at 324; *see also Rosario v. Mis Hijos Deli Corp.*, No. 15-CV-6049, 2018 WL 4636822, at *7 (S.D.N.Y. Sept. 27, 2018) ("A defendant's extensive experience in an industry does not, alone, support an inference that she was aware of the FLSA's requirements.").

Next, Plaintiff attempts to allege willfulness by adding that the Club: (1) "took no steps to determine whether it was complying with the FLSA or Labor Law" with respect to how its caddies are compensated, (2) "knowingly disregarded the FLSA and Labor Law's

requirements…because it believed its caddies would not take legal action" out of fear of being blacklisted by other golf clubs, (3) "knowingly disregarded the FLSA and Labor Law's requirements as to its golf caddies" because it does not pay its other employees in a similar manner, (4) received complaints from "numerous caddies" about "[not getting paid] anything when they were at the Club all day and did not go out on a loop," and (5) failed to change its compensation policies or confirm its compliance with the FLSA in response to those complaints. (SAC ¶¶ 80-85.)

First, the allegation that the Club failed to take steps to ensure compliance with the FLSA regarding how it compensates its caddies is essentially akin to a bald assertion that the Club showed disregard for whether its conduct violated the FLSA. This, however, amounts to nothing more than a restatement of one of the two ways willfulness can be established—and such "[t]hreadbare recitals of the elements of a cause of action" are exactly what *Iqbal* warns against. *Iqbal*, 556 U.S. at 678. This allegation, without more, does not lead to the inference that the Club was aware of its legal obligations under the FLSA and deliberately disregarded them.

Next, the allegation that the Club knowingly disregarded its legal obligations under the FLSA and Labor Law because it pays its other employees differently is insufficient to establish willfulness. Plaintiff fails to specify who these other employees are, what their job duties entail, whether those duties are comparable to the duties of caddies, and how they are compensated. More critically, Plaintiff does not allege that the Club's compensation policy for caddies is "so oddly paired with caddy services that a plausible inference would be that the Club designed it to evade the FLSA." (Order at 6). For example, Plaintiff does not provide any comparison to how other golf clubs compensate their caddies. Lastly, the assertion that the Club knowingly

disregarded its legal obligations under the assumption that its caddies would not pursue legal

action for fear of retribution is similarly speculative and unsupported.

While Plaintiff's unsubstantiated allegations that the Club "knowingly disregarded" its

legal obligations fail to support a plausible inference of a willful violation, it is the allegation that

numerous caddies complained to the Caddy Master that nudges Plaintiff's claims "across the line

from conceivable to plausible." *Twombly*, 550 U.S. at 570. Courts in the Second Circuit have

held that complaints from employees can put employers on notice that they are in violation of the

FLSA. *See Mackenzie v. Waypointe Partners Mgmt. LLC*, No. 22-CV-7951, 2025 WL 388296, at

*5 (S.D.N.Y. Feb. 4, 2025) ("Prior complaints to an employer regarding an [FLSA] violation are

sufficient to put the employer on notice about its obligations under the FLSA and thus establish

willfulness." (quoting *Brain v. Execu-Search Grp., LLC*, No. 22-CV-8219, 2024 WL 838085, at

*4 (S.D.N.Y. Feb. 28, 2024)); *Markovic v. Milos Hy, Inc.*, No. 22-CV-1412, 2023 WL 4763807,

at *7 (S.D.N.Y. July 26, 2023) (concluding the plaintiffs "d[id] not just make conclusory

allegations of willfulness" where they alleged that they complained about the underpayment of

tips); *Malcolm v. City of New York*, No. 20-CV-9641, 2023 WL 4298869, at *3 (S.D.N.Y. June

30, 2023) (concluding that the plaintiff had plausibly alleged willfulness where plaintiff

submitted numerous complaints regarding his unpaid overtime). Here, Plaintiff alleges that she

"heard numerous caddies complain to the Caddy Master about the Club not paying caddies

anything when they were at the Club all day and did not go out on a loop." (SAC ¶ 83.)

Defendant contends that these complaints are "still insufficient to establish willfulness because

Plaintiff does not allege that the Club's policy 'is so oddly paired with caddy services that a

plausible inference would be that the Club designed it to evade the FLSA.'" (Def.'s Mem. of

Law at 8 (quoting Order at 6)). The Court agrees that, even in the face of repeated complaints, it

is plausible that the Club still lacked an awareness of impropriety, given that its compensation

practices are consistent with long-standing industry custom for compensating golf caddies. *Id.*

Nevertheless, in drawing all reasonable inferences in favor of the Plaintiff, it is equally plausible

that the Club willfully violated the FLSA when complaints from numerous caddies put the Club

on notice and the Club subsequently failed to respond. While the Court appreciates that these

allegations are thin, Plaintiff's burden at this stage is only to allege facts sufficient to make

willfulness plausible—not probable or undeniable. Further, the Court joins its fellow district

court who recently found that near-identical allegations were sufficient to sustain a claim of

willfulness, albeit also marginally. *See Lewis v. Pelham Country Club*, No. 23-CV-6500 (KMK)

(S.D.N.Y. Sept. 23, 2025).

## II.    State Law Claims

In its Motion, Defendant argues that because Plaintiff's federal law claims fail, the Court

should decline to exercise jurisdiction over Plaintiff's state law claims. (*See* Def.'s Mem. of Law

at 9.) Because the Court denies Defendant's Motion, it retains jurisdiction over Plaintiff's state

law claims. *See Gabriel Velez v. MedRite, LLC*, No. 24-CV-2707, 2025 WL 2650137, at *1

(S.D.N.Y. Sept. 15, 2025) ("Because one of the plaintiffs has pleaded a federal claim under the

FLSA and Plaintiffs' state law claims are part of the same case or controversy and no

circumstances justify declining to exercise jurisdiction, the Court has jurisdiction over Plaintiffs'

state law claims.").

## CONCLUSION

For the foregoing reasons, Defendant's Motion is DENIED. Defendant is directed to file

an answer on or before October 21, 2025. The parties are directed to confer, complete, and

submit a Case Management Plan and Scheduling Order (blank form attached hereto) on or before

November 4, 2025.

 The Clerk of Court is kindly directed to terminate motion at ECF No. 31.

SO ORDERED:

Dated: September 29, 2025
White Plains, New York

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT                                        Rev. May 2014
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x


                                                    **CIVIL CASE DISCOVERY PLAN**
                          Plaintiff(s),             **AND SCHEDULING ORDER**
        - against -


                          Defendant(s).     _____ CV _____ (NSR)


-------------------------------------------------------------x

        This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

   1.   All parties [consent] [do not consent] to conducting all further proceedings before
        a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).
        The parties are free to withhold consent without adverse substantive consequences.
        (If all parties consent, the remaining paragraphs of this form need not be
        completed.)

   2.   This case [is] [is not] to be tried to a jury.

   3.   Joinder of additional parties must be accomplished by _____.

   4.   Amended pleadings may be filed until _____. Any party
        seeking to amend its pleadings after that date must seek leave of court via motion.

   5.   Interrogatories shall be served no later than _____, and responses
        thereto shall be served within thirty (30) days thereafter.  The provisions of Local
        Civil Rule 33.3 [shall] [shall not] apply to this case.

   6.   First request for production of documents, if any, shall be served no later than
        _____.

   7.   Non-expert depositions shall be completed by _____.

        a.   Unless counsel agree otherwise or the Court so orders, depositions shall not
             be held until all parties have responded to any first requests for production
             of documents.

        b.   Depositions shall proceed concurrently.

        c.   Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.     Any motions shall be filed in accordance with the Court's Individual Practices.

16.     This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.     The Magistrate Judge assigned to this case is the Hon. _____.

18.     If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.     The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


        SO ORDERED.

Dated:  White Plains, New York

        _____


                                                _____
                                                Nelson S. Román, U.S. District Judge